IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| JANE DOE, JOHN DOE, JACK DOE, and JANET DOE, Individually, on behalf of themselves, and all others similarly situated,<br><br>                         Plaintiffs,<br><br>      v.<br><br>ERLANGER HEALTH d/b/a ERLANGER HEALTH SYSTEM,<br><br>                         Defendant. | Civil Action No.: 1:23-cv-00297 |

## NOTICE OF REMOVAL

Defendant Erlanger Health d/b/a Erlanger Health System ("Defendant") hereby removes this putative class action to federal court pursuant to the federal officer removal statute, codified at 28 U.S.C. § 1442(a)(1). In support, Defendant provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

### NATURE OF THE CASE

1. Over the past two decades, the federal government has engaged in an extensive effort to establish a nationwide health information technology infrastructure. This case is one of numerous website privacy cases that have been filed against health care providers throughout the nation, including several cases across federal courts. *Naugle v. Duke Univ. Health Sys., Inc.,* Case No. 1:22-cv-00727 (M.D.N.C. Sept. 9, 2022); *Simon v. New York-Presbyterian Healthcare Sys., Inc. et al.*, Case No. 23-3428 (S.D.N.Y. Apr. 24, 2023); *Kurowski v. Rush Sys. for Health*, No. 22

C 5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023); *Cousin, et al. v. Sharp Healthcare*, --- F. Supp. 3d ---, 2023 WL 4484441 (S.D. Cal. 2023).

2. Named plaintiffs Jane Doe, John Doe, Jack Doe, and Janet Doe ("Plaintiffs") filed their putative Class Action Complaint and Jury Demand against Defendant in the Chancery Court for the Eleventh Judicial District, Hamilton County, Tennessee, Case No. 23-0730 on October 31, 2023 (the "Complaint"); *See* Ex. A[1] ()(Compl.), filed October 31, 2023. Plaintiffs served Defendant with a copy of the Complaint on November 13, 2023. *See id.*(Summons Return).

3. The underlying factual basis for Plaintiffs' Complaint is that Defendant allegedly violated Tennessee law by embedding certain third-party source codes—called the Meta Pixel—onto Defendant's publicly available website, referred to in the Complaint as the "Website" and "Online Platforms." Ex. A(Compl.) at ¶¶ 6-7, 9-10.

4. Plaintiffs further allege that Defendant violated Tennessee law by installing other tracking technology—such as the Conversions Application Programming Interface—on its website. *Id.* at ¶¶ 12, 19.

5. Plaintiffs allege that these tracking tools, including the Meta Pixel, are "bits of code" that collect data on users as they navigate the Website and Online Platforms, including "any buttons clicked by site visitors, the labels [*sic*] those buttons and any pages visited as a result of the button clicks." *Id*. at ¶¶ 49, 55.

6. Plaintiffs allege that Defendant "purposely installed the Meta Pixel and other trackers" on its Website and Online Platforms. *Id.* at ¶ 45. In doing so, Defendant "shared patient

---

[1] Defendant has attached as (collective) Exhibit A copies of the state court pleadings that were filed in the Chancery Court of Hamilton County, Tennessee prior to removal. In citing Exhibit A, Defendant will refer to the specific pleading or paper being referenced.

information, including Private Information belonging to Plaintiffs and Class Members, with Facebook and other unauthorized third parties." *Id.*

7. For example, as Plaintiffs allege, Defendant installed the Meta Pixel and other trackers on its online patient portal, located at https://www.erlanger.org/medical-services/patient-portals. *Id*. at ¶¶ 87, 90.

8. Plaintiff Jane Doe alleges that she has been a patient of Defendant since 2018 and that she accessed the Website and Online Platforms to search for an orthopedic doctor. *Id*. at ¶¶ 101-102.

9. Plaintiff John Doe alleges that he has been a patient of Defendant since 1990 or 1991 and that he accessed the Website and Online Platforms to find doctors, search for medical treatment information, and research services. *Id*. at ¶¶ 108-109.

10. Plaintiff Jack Doe alleges that he has been a patient of Defendant since 2006 and that he accessed the Website and Online Platforms to find a weight loss doctor, search for treatment information, and access the patient portal to schedule appointments. *Id*. at ¶¶ 115-116.

11. Plaintiff Janet Doe alleges that she has been a patient of Defendant since 2018 and that she accessed the Website and Online Platforms to find a doctor, a gynecologist, search for medical conditions and symptoms, research medical services, and to access the patient portal to schedule appointment. *Id*. at ¶¶ 122-123.

12. Based on these facts, the Complaint contains eight counts against Defendant under Tennessee law: (1) negligence (*id.* at ¶¶ 196-204), (2) negligence *per se* (*id*. at ¶¶ 205-216), (3) invasion of privacy (*id.* at ¶¶ 217-226), (4) breach of implied contract (*id.* at ¶¶ 227-237), (5) unjust enrichment (*id.* at ¶¶ 238-245), (6) breach of fiduciary duty (*id.* at ¶¶ 246-252), (7) violation of the

Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* (*id.* at ¶¶ 253-266), and (8) violation of Tennessee's wiretapping statute, Tenn. Code Ann. § 39-13-601 (*id.* at ¶¶ 267-277).

## GROUNDS FOR REMOVAL

13. Defendant removes Plaintiffs' Complaint under the federal officer removal statute, codified at 28 U.S.C. § 1442(a).

14. Under 28 U.S.C. § 1442(a)(1), a civil action that is "against or directed to" any of the following may be removed to federal court: "(1) the United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency therefore, in an office or individual capacity, *for or relating to any act under color of such office . . . .*" *Id.* § 1442(a)(1) (emphasis added).

15. To remove under the statute, Defendant must show that as a private "person" (1) it acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) it has a colorable federal defense to the claims. 28 U.S.C. § 1442(a)(1); *see Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *see also Greene v. Citigroup, Inc.*, No. 99-1030, 2000 WL 647190, at *2 (10th Cir. May 19, 2000) (unpublished) (applying a similar three-part test for federal officer removal jurisdiction); *Hazen v. S. Hills Nat. Bank of Tulsa*, 414 F.2d 778, 779 (10th Cir. 1969) (the court, citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969), found that it was sufficient for one seeking removal under § 1442(a)(1) to show that the defendant's relationship with the plaintiff arose solely due to the defendant fulfilling his official duties as appointed by an agency of the United States federal government).

16. The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and defendants can remove under this statute when they are

4

acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

**I.     Defendant is a "Person" Within the Meaning of the Statute.**

17.     Plaintiffs allege that Defendant is "a non-profit corporation organized and existing under the laws of the State of Tennessee." Ex. A (Compl.) at ¶ 33.

18.     While the statute is silent as to the definition of a "person," organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed "persons" under the statute. *See, e.g., Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023) (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008) for the proposition that "[c]orporations are persons under § 1442(a)"). Utilizing this logic, Defendant is a person under the federal officer removal statute.

**II.    Defendant Acted Under Color of Federal Law Under 28 U.S.C. § 1442(a)(1).**

19.     President George W. Bush first established "the position of National Health Information Technology Coordinator" in 2004 "to provide leadership for the development and nationwide implementation of an interoperable information technology infrastructure to improve the quality and efficiency of healthcare." *See* Exec. Order No. 13335, at pg. 702 (Apr. 27, 2004), *Incentives for the Use of Health Information Technology and Establishing the Position of the National Health Information Technology Coordinator*, available at https://www.presidency.ucsb.edu/documents/executive-order-13335-incentives-for-the-use-health-information-technology-and. The purpose of the Executive Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

20. Under the Executive Order, "[t]he National Coordinator shall, to the extent permitted by law, develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." *Id.* at pg. 703 (*Section 3, Responsibilities of the National Health Information Technology Coordinator*).

21. In 2009, Congress codified the National Coordinator position through the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH Act), *see* 123 Stat. 115, 230 (2009): "There is established within the Department of Health and Human Services an Office of the National Coordinator for Health Information Technology (referred to in this section as the 'Office.' The Office shall be headed by a National Coordinator who shall be appointed by the Secretary and shall report directly to the Secretary." 42 U.S.C. § 300jj-11(a) (Office of the National Coordinator for Health Information Technology).

22. Congress tasked the National Coordinator with certain federal duties through the HITECH Act, *see* 42 U.S.C. § 300jj-11(c)(1) ("Duties of the National Coordinator"), including to "update the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics with respect to the following: (i) The electronic exchange and use of health information and the enterprise integration of such information." 42 U.S.C. § 300jj-11(3)(A).

23. The HITECH Act further required, as a duty for the National Coordinator, "Collaboration": "The strategic plan shall be updated through collaboration of public and private entities." 42 U.S.C. § 300jj-11(3)(B).

24. From the outset, a core tenet of this federal health information technology initiative was for individuals to have access to their health care records online. *See* TOMMY G. THOMPSON & DAVID J. BRAILER, MD, PHD, *The Decade of Health Information Technology: Delivering Consumer-centric and Information-rich Health Care*, at pg. e (July 21, 2004) (discussing a "Medicare beneficiary portal"); *id.* at Attachment 1, Off. of Personnel Mgmt. Rep. at 6-7 (July 2004) (discussing "MyAnthem," which "provides an easy way to help members gain more control over their health care benefits through secure access that's available at any time and from any place"); *id.* at Attachment 2, Veteran Affairs Rep., at 18 (July 15, 2004) (discussing "My HealtheVet – The Personal Health Record").

25. To make this and other federal health information technology goals a reality, the HITECH Act allocated billions of dollars for the health care system to adopt and meaningfully use "certified health information technology." *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology).

26. The following year, the Department of Health and Human Services (HHS) implemented this Congressional enactment through the "Meaningful Use Program," which is now known as the Promoting Interoperability Program. *See* Vol. 75 Fed. Reg., No. 144, pg. 44314 (Jul. 28, 2010).

27. The Meaningful Use Program mandated that participants provide their patients with the ability to "view, download, and transmit" their health information online. *See, e.g.*, 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) ("Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission."); *id.* at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are

7

discharged from inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge").

28.     Defendant acted pursuant to these Meaningful Use Program in making a patient portal available to Defendant's patients online. As set forth above, the link to this patient portal is available at https://www.erlanger.org/medical-services/patient-portals.

29.     Ongoing usage of the portal is necessary for Defendant to meet the Meaningful Use Program criteria. Defendant submits mandatory annual reports on its involvement in the Meaningful Use Program / Promoting Interoperability Program to the Center for Medicare and Medicaid Services (CMS) through the QualityNet Secure Portal, also known as QNet. These reports are made specifically to meet federal requirements and include submissions regarding the Defendant patient portal and Defendant's patients' use of the portal.

### III.    Plaintiffs' Tennessee State Law Claims are "For or Relating to" the Defendant Patient Portal.

30.     The next requirement for federal officer removal is a causal nexus between Defendant's actions taken under federal law and Plaintiffs' claims. To meet this requirement, under the plain language of 28 U.S.C. § 1442(a)(91), Plaintiffs' claims must only be "for or relating to" Defendant's actions taken under federal law. *Id.*; 28 U.S.C. § 1442(a)(1).

31.     "Circuits have consistently given this requirement a broad reading." *Moore v. Elec. Boat Corp.,* 25 F.4th 30, 35 (1st Cir. 2022). In fact, the "for or relating to" requirement under § 1442(a)(1) is liberally construed and constitutes a lower burden than even a "causal connection." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (overturning a district court that imposed a "strict causal connection" though "§ 1442(a)(1) requires [] only that the charged conduct *relate to* an act under color of federal office") (emphasis in original). The Fifth Circuit, for example, expressly rejected a more stringent reading of this requirement. *See Latiolais*, 951 F.3d

8

at 296 (overruled cases to the extent they "erroneously relied on a 'causal nexus' test"). Moreover, any single claim is independently sufficient to satisfy the "for or relating to" requirement under § 1442(a)(1); *see Moore*, 25 F.4th at 35 (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020)).

32. This statutory language is met here because Plaintiffs specifically claim that it is an alleged privacy violation under Tennessee state law each time an individual utilizes Defendant's publicly accessible website.

33. Plaintiffs allege that "[u]nder HIPAA, a healthcare provider may not disclose personally identifiable, non-public medical information (PHI) about a patient, a potential patient, or household member of a patient for marketing purposes without the patients' express written authorization." Ex. A (Compl.) at ¶ 137 (footnote omitted).

34. Plaintiffs further allege that "[g]uidance from [HHS] instructs healthcare providers that patient status alone is protected by HIPAA." *Id.* at ¶ 138; *see also id.* at ¶ 143 (claiming "where an individual seeks medical treatment" is considered PHI under the HIPAA privacy rule) (quoting HHS, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*).

35. As set forth above, the Defendant patient portal is one of the alleged "Online Platforms" at issue in the Complaint. Ex. A (Compl.) at ¶ 7 ("Defendant encourages its patients to use its Website, along with its various web-based tool and services (collectively, the 'Online Platforms'), to learn about Erlanger via its main website page, find doctors, search for information on medical conditions, find medical services, access a patient portal via a pre-portal page, and more.") (footnotes omitted); *id.* at ¶ 17 ("The information that Defendant's Meta Pixel and possible CAPI sent to Facebook can include the Private Information that Plaintiffs and Class Members submitted to Defendant's website, including, for example, the parameters of their doctor searches,

the contents of their search queries, their searches for medical information and services, their pre-portal activity, and, more . . .").

36. Plaintiffs specifically allege that they relied on Defendant's Website and Online Platforms to communicate confidential patient information. *Id*. at ¶¶ 101, 108, 115, 122.

37. Moreover, Plaintiffs allege that it is a breach of fiduciary duty (among other violations) each time an individual clicks on Defendant's patient portal link alone.

38. Plaintiffs allege that their breach of fiduciary claim is based on the alleged disclosure of patient status in this manner: "Defendant breached the fiduciary duty that it owed to Plaintiff and the Class Members by . . . failing to protect, and, intentionally disclosing, their Private Information." *Id.* at ¶ 248.

39. The Private Information referred to includes Plaintiffs' "confidential Personally Identifying Information ('PII') and/or Protected Health Information ('PHI') (collectively referred to as 'Private Information')." *Id*. at ¶ 1 (footnotes omitted).

40. "'[P]rotected health information' is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations." *Id*. at fn. 2 (quoting 45 C.F.R. § 160.103).

41. Specifically, Plaintiffs allege that this includes information "*such as an indication that the individual was treated at a certain clinic*." *Id*. at ¶ 139 (emphasis added; citation omitted); *see also id.* at ¶ 138 (claiming "[g]uidance from [HHS] instructs healthcare providers that *patient status alone* is protected by HIPAA.") (emphasis added).

42. In sum, through their allegations, Plaintiffs allege that Defendant's publicly available Website and online patient portal repeatedly violated their and the putative class members' privacy by violating HIPAA, giving rise to a breach of fiduciary duty (among other claims) under Tennessee state law every time an individual clicks on Defendant's Website and attempts to access its online patient portal.

43. For these reasons, Plaintiffs' claims meet the statutory requirement of being "for or related to" Defendant's alleged actions taken under color of federal law.

**IV. Defendant has Colorable Federal Defenses to Plaintiffs' Claims.**

44. Defendant has colorable federal defenses to Plaintiffs' claims.

45. *First*, when an alleged and disputed federal duty forms the basis for plaintiff's alleged state law claims, then removal under 28 U.S.C. 1442(a)(1) is appropriate. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (holding that "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends upon federal law"). In this case, Plaintiffs' Complaint relies on a purported interpretation of HIPAA as the basis for several of their causes of action. Ex. A (Compl.) at ¶¶ 137-144. As the Supreme Court held in *Mesa v. California*, 489 U.S. 121 (1989): "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose other obligations that may shield the federal officer against civil suits." 489 U.S. at 130 (emphasis in original). "Both are equally defensive and equally based in federal law." *Id*.

46. Here, Defendant will argue that the specific information allegedly disclosed (i.e., IP addresses and other web metadata) is outside of the purview of protected health information as

defined by HIPAA. *See Kurowski*, 2023 WL 4707184, at *3-4 (holding that "[t]he interpretation of [individually identifiable health information] offered by HHS in its guidance goes well beyond the meaning of what the statute can bear"). The Northern District of California has already held as such in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

47. *Second*, Defendant has a preemption defense to Plaintiffs' Tennessee state law claims. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines).

48. A defendant therefore cannot be held liable under a given state law for doing precisely what the federal government wants it to do—as applied here, not only making an online portal readily available to patients but also promoting the meaningful use of that portal. *See, e.g., Boggs v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").

49. *Third,* the First Amendment will be a defense to Plaintiffs' alleged causes of actions because in *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Supreme Court held that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Id*. at 570. Plaintiffs' entire Complaint challenges how Defendant allegedly uses its website

analytical tools to enhance Defendant's ability to speak to the public, including through the creation and dissemination of information. *E.g.,* Ex. A (Compl.) at ¶¶ 16, 45.

50. As the Supreme Court has also held, specifically emphasizing the fundamental need of maintaining the First Amendment's protection of speech on the internet: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1997)).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

51. Defendant satisfies all of the procedural requirements under 28 U.S.C. § 1446.

52. Defendant was served on November 13, 2023 and is filing this notice of removal within thirty days of its receipt of the Complaint by service pursuant to 28 U.S.C. § 1446. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

53. Defendant files this notice of removal in the United States District Court of the Eastern District of Tennessee because the state court in which the action is pending, the Chancery Court for the Eleventh Judicial District, Hamilton County, Tennessee, is located within this federal judicial district. *See* 28 U.S.C. § 123(a)(3).

54. The removal notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

55. As noted above, Defendant has attached as (collective) Exhibit A copies of the state court pleadings that were filed in the Chancery Court of Hamilton County, Tennessee prior to removal.

56. Upon filing this Notice of Removal, Defendant will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Chancery Court of Hamilton County.

## CONCLUSION

Plaintiffs' Complaint directly challenges practices and procedures Defendant has taken acting under color of federal law, and this case is therefore removable to this Court under 28 U.S.C. § 1442(a)(1).

Dated: December 13, 2023

Respectfully submitted,

By: */s/ Arthur P. Brock*
Arthur P. Brock, BPR No. 014189
Joseph Alan Jackson II, BPR No. 030203
**SPEARS, MOORE, REBMAN & WILLIAMS, P.C.**
601 Market Street, Suite 400
Chattanooga, TN 37402
Telephone: (423) 757-0407
Facsimile: (423) 756-4801
*apb@smrw.com*
*jaj@smrw.com*

Paul G. Karlsgodt (motion for admission *pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
*pkarlsgodt@bakerlaw.com*

John P. Hutchins (motion for admission *pro hac vice* forthcoming)
Georgia L. Bennett (motion for admission *pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1170 Peachtree Street NE, Suite 2400
Atlanta, GA 30309
Telephone: (404) 946-9841
Facsimile: (404) 459-5734
*jhutchins@bakerlaw.com*
*gbennett@bakerlaw.com*

*Counsel for Defendant Erlanger Health*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December 13, 2023, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. In addition, copies of the foregoing have been served by email.

| | |
|---|---|
| J. Gerard Stranch, IV<br>Andrew E. Mize<br>**STRANCH, JENNINGS & GARVEY, PLLC**<br>The Freedom Center<br>223 Rosa L. Parks. Ave., Suite 200<br>Nashville, Tennessee 37203<br>Telephone: (615) 254 - 8801<br>Facsimile: (615) 225 - 5419<br>gstranch@stranchlaw.com<br>amize@stranchlaw.com | Lynn A Toops<br>Amina A. Thomas<br>Mary Kate Dugan<br>**COHEN & MALAD, LLP**<br>One Indiana Square, Suite 1400<br>Indianapolis, Indiana 46205<br>Telephone: (317) 636 – 6481<br>ltroops@cohenandmalad.com<br>athomas@cohenandmalad.com<br>mdugan@cohenandmalad.com<br><br>Samuel J. Strauss<br>Raina Borelli<br>**TURKE & STRAUSS, LLP**<br>613 Williamson St., Suite 201<br>Madison, Wisconsin 53703<br>Telephone: (608) 237-1775<br>Facsimile: (608) 509 - 4423<br>sam@turkestrauss.com<br>raina@turkestrauss.com |

*/s/ Joseph Alan Jackson II*
Joseph Alan Jackson II